## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO
### The Honorable Michael E. Romero

| | |
|---|---|
| In re: | |
| | Case No. 19-15069 MER |
| FRANK WILLIAM MCINTYRE, | |
| Debtor. | Chapter 13 |
| FRANK MCINTYRE, | |
| | Adv. Case No. 19-01245 MER |
| Plaintiff. | |
| v. | |
| DENNIS FANGMAN, KEN OLSON, SOL ENERGY, LLC, CHARLES WILLMAN, and DAVID MCCONAUGHY, | |
| Defendants. | |

### ORDER

THIS MATTER comes before the Court on a multitude of filings by the parties in this adversary proceeding:  Motion to Dismiss Adversary Proceeding Complaint filed by Defendants SoL Energy LLC ("**SoL Energy**"), Ken Olson, and David McConaughy[1] (together, the "**Energy Defendants**"); the Response thereto[2] filed by Plaintiff Frank McIntyre ("**Debtor**"); the Energy Defendants' Reply thereto[3]; Debtor's Sur-Reply thereto[4]; Motion to Dismiss Charles H. Willman as Defendant and Claims Against Charles H.

---

[1] ECF No. 18 ("**Energy Motion to Dismiss**").

[2] ECF No. 21.

[3] ECF No. 22.

[4] ECF No. 36.  Debtor filed a consolidated sur-reply to the Energy Motion to Dismiss and the Willman Motion to Dismiss.

Willman filed by Willman[5]; Debtor's Corrected Response thereto[6]; Willman's Reply thereto[7]; Debtor's Sur-Reply thereto[8]; Second Motion for Leave to File First Amended Adversary Complaint filed by Debtor [9]; the Energy Defendants' Objection thereto[10]; Willman's Objection thereto[11]; Debtor's Reply thereto[12]; Debtor's Withdrawal of Pleading Tendered to the Court and Motion to Substitute the Attached First Amended Adversary Complaint[13]; and Willman's Objection thereto.[14]

## BACKGROUND

This adversary proceeding is the result of a business dispute.  Based on allegations in Debtor's Adversary Complaint,[15] Debtor was formerly the sole owner and member of Glenwood Clean Energy, Ltd. ("**GCE**").  GCE and SoL Energy, of which Olson is the sole member, worked together on the installation of a solar energy system for Fangman's property (the "**Fangman Project**").  The Installation Agreement for the Fangman Project provided for payments from Fangman to GCE, and Debtor asserts a total of $46,960.50 is owed to GCE, plus interest and collection costs.

SoL Energy's right to payment on the Fangman Project is not addressed in the Installation Agreement, or in any other formal agreement between the parties.  Debtor contends GCE and SoL Energy agreed to split the gross profits from the Fangman Project 50/50 after reimbursement for materials and labor, with each company projected to receive gross profits of $3,600 (the "**Revenue Sharing Agreement**").

---

[5] ECF No. 52 ("**Willman Motion to Dismiss**" and together with the Energy Motion to Dismiss, the "**Motions to Dismiss**").

[6] ECF No. 30.

[7] ECF No. 34.

[8] ECF No. 49 (the "**Motion to Strike**").

[9] ECF No. 33 ("**Motion to Amend**").

[10] ECF No. 38.

[11] ECF No. 39.

[12] ECF No. 45.

[13] ECF No. 43 (the "**Motion to Substitute**").

[14] ECF No. 51.

[15] ECF No. 1 (the "**Complaint**").

Shortly before completion of the Fangman Project, Debtor began requesting records regarding SoL Energy's materials and labor from Olson for reimbursement pursuant to the Revenue Sharing Agreement. Meanwhile, however, SoL Energy sent an invoice to Fangman directly for monies owed.  Debtor then requested payment from Fangman for the balance due under the Installation Agreement.  Fangman refused and, due to the competing demands for payment received from SoL Energy and the Debtor, initiated an interpleader proceeding with the District Court for Garfield County, Colorado (the "**State Court Case**").  Fangman deposited $48,250 into the registry of the court in the State Court Case.  Debtor alleges the State Court Case was orchestrated by the Energy Defendants, Fangman, and his attorney, Willman, as an improper prejudgment attachment of funds owed to GCE.

As noted in the Motions to Dismiss, the Debtor asserted multiple counterclaims and cross-claims in the State Court Case, with multiple amendments to his counterclaims and cross-claims and multiple orders dismissing counterclaims and cross-claims.[16]  Prior to the filing of his bankruptcy, the Debtor's counterclaims and cross-claims remaining in the State Court Case were as follows: 1) breach of contract against Fangman; 2) breach of contract and bad faith against SoL Energy; 3) interference with a contract against SoL Energy.[17]  All other counterclaims and cross-claims asserted by Debtor had been dismissed with prejudice, with the exception of Debtor's claim for fraud against Olson, which was dismissed without prejudice.[18]

Approximately three months after the State Court denied Debtor's request for leave to file a third amendment of his counterclaims and cross-claims. and prior to a hearing to determine the amount of attorneys' fees and costs to be awarded to Olson,[19] Debtor filed his bankruptcy petition. This adversary proceeding followed shortly thereafter.

In his Complaint, Debtor initially asserted fifteen claims for relief against the defendants, and additionally objected to any proofs of claims

---

[16] Energy Motion to Dismiss at ¶¶ 6-7, 10, 17; Willman Motion to Dismiss at pp. 1-3

[17] Energy Motion to Dismiss at ¶ 19; Willman Motion to Dismiss at p. 2.  Although the State Court granted the Debtor leave to file the Second Amended Crossclaims and Counterclaims in part, it declined to allow Debtor to assert claims for intentional and negligent infliction of emotional distress (included in the Second Amended Crossclaims and Counterclaims as the second, third, seventh, and eighth counterclaims and crossclaims).  Energy Motion to Dismiss at Exh. F.

[18] *Id.* at ¶¶ 8, 14.

[19] *Id.* at Exhs. H, I.

filed by Defendants Olson and SoL Energy.  As relevant herein, the Energy Motion to Dismiss and Willman Motion to Dismiss, as well as various other motions, responses, replies and sur-replies, followed.  Debtor then filed a Motion for Leave to File First Amended Adversary Complaint,[20] which was later withdrawn[21] and then replaced by the Motion to Amend.  The Motion to Amend was itself followed by the Motion to Substitute with a further amended Complaint (the "**Amended Complaint**"), to which Defendant Willman objected.[22]

In the Amended Complaint, the Debtor asserts the following claims for relief: 1) breach of contract and breach of duty of good faith and fair dealing against SoL Energy; 2) aiding and abetting breach of contract and breach of duty of good faith and fair dealing against Olson; 3) interference with a contract against Olson and SoL Energy; 4) aiding and abetting interference with the Installation Agreement and direct interference with the Revenue Sharing Agreement against Olson; 5) breach of fiduciary duty against SoL Energy; 6) aiding and abetting breach of fiduciary duty against Olson; 7) negligence and gross negligence against Olson and SoL Energy; 8) fraud against Olson and SoL Energy; 9) intentional infliction of emotional distress against Olson and SoL Energy; 10) malicious abuse of legal process and fraud against the Energy Defendants; 11) breach of contract and breach of good faith and fair dealing against Fangman; 12) negligence and gross negligence against Fangman and Willman; 13) intentional infliction of emotional distress against Fangman and Willman; 14) malicious abuse of legal process and fraud against Fangman and Willman; 15) estoppel against Olson and SoL Energy (together with the preceding claims, the "**State Law Claims**"); and 16) a claim under 42 U.S.C. § 1983 against all defendants (the "**1983 Claim**").  Additionally, the Debtor objects to the claims of Olson and SoL Energy as fraudulent, unliquidated, disputed, and contingent.

## ANALYSIS

With respect to Debtor's Motion to Amend, under Fed.R.Civ.P. 15, as made applicable herein by Fed.R.Bankr.P. 7015, "[t]he court should freely give leave [to amend a pleading] when justice so requires."  Leave to amend is generally denied "only on 'a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment.'"[23]  "'A

---

[20] ECF No. 24.

[21] ECF No. 29.

[22] ECF No. 51.

[23] *Duncan v. Manager, Dept. of Safety, City and County of Denver*, 397 F.3d 1300, 1315

proposed amendment is futile if the complaint, as amended, would be subject to dismissal.'"[24]

Although the Motions to Dismiss are directed at the original Complaint, an inquiry regarding the futility of the proposed Amended Complaint will involve nearly identical issues as the Court's consideration of the Motions to Dismiss given the similarities between the Complaint and the proposed Amended Complaint.  The Court notes the main differences between the Complaint and proposed Amended Complaint are that the Debtor added "malicious abuse of legal process" to his claims for fraud on the court asserted in the tenth and fourteenth claims for relief and added the 1983 Claim.

At the outset, in reviewing the claims asserted by the Debtor in this proceeding, it is clear there is a significant overlap with the Debtor's claims asserted throughout the State Court Case.  Except for Debtor's claim objections and the 1983 Claim, the claims asserted herein are grounded in state law.  As such, the Court must consider its jurisdiction to hear such claims.  "Federal courts are courts of limited jurisdiction; they are empowered to hear only those causes authorized and defined in the Constitution which have been entrusted to them under a jurisdictional grant by Congress."[25]  A plaintiff generally bears the burden of demonstrating the court's jurisdiction to hear his or her claims.[26]  Fed. R. Civ. P. 12(b)(1), made applicable to adversary proceedings by Fed. R. Bankr. P. 7012(b)(1), allows a party to raise a defense of the court's "lack of jurisdiction over the subject matter" by motion.[27]  Likewise, because federal courts have limited jurisdiction, a federal court may, and has a duty to, inquire into its own jurisdiction *sua sponte.*

---

(10th Cir. 2005) (quoting *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993)).

[24] *Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 521 F.3d 1278, 1288 (10th Cir. 2008) (quoting *Anderson v. Suiters, et al.*, 499 F.3d 1228, 1238 (10th Cir. 2007)).  *See also Gohier v. Enright*, 186 F.3d 1216, 1218 (10th Cir. 1999) ("The futility question is functionally equivalent to the question whether a complaint may be dismissed for failure to state a claim . . . .").

[25] *Henry v. Office of Thrift Supervision*, 43 F.3d 507, 511 (10th Cir. 1994) (citations omitted).

[26] *Gerald v. Locksley*, 849 F.Supp.2d 1190, 1206 (D.N.M. 2011) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 104 (1998) ("[T]he party invoking federal jurisdiction bears the burden of establishing its existence.")).

[27] Fed. R. Civ. P. 12(b)(1).

Section 1334(b)[28] provides: "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."[29]  The terms "arising under," "arising in" and "related to" are unambiguous and well established terms of bankruptcy art.[30]  "A proceeding 'arises under' the Bankruptcy Code if it asserts a cause of action created by the Code, such as exemption claims under 11 U.S.C. § 522, avoidance actions under 11 U.S.C. §§ 544, 547, 548, or 549, or claims of discrimination under 11 U.S.C. § 525."[31]  "Proceedings 'arising in' a bankruptcy case are those that could not exist outside of a bankruptcy case, but that are not causes of action created by the Bankruptcy Code."[32]  "If a proceeding 'could have been commenced in federal or state court independently of the bankruptcy case, but the 'outcome of that proceeding could conceivably have an effect on the estate being administered in bankruptcy,' it is 'related to' a bankruptcy case."[33]

Even if the Court may exercise "related to" jurisdiction over a dispute, however, abstention from hearing the proceeding may be required or appropriate in some circumstances.  Section 1334(c) sets forth provisions for mandatory and discretionary abstention.  With respect to discretionary abstention, § 1334(c)(1) provides:

> Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.[34]

Courts apply several factors in analyzing whether to exercise such discretion, including: 1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention; 2) the extent to which state law issues predominate over bankruptcy issues; 3) the

---

[28] Unless otherwise specified, all references herein to "Section" and "§" refer to Title 28 of the United States Code, 28 U.S.C. § 1, *et seq.*

[29] 28 U.S.C. § 1334(b).

[30] *In re Excel Storage Products, L.P.*, 458 B.R. 175, 181 (Bankr. M.D. Pa. 2011).

[31] *In re Sunbridge Capital, Inc.*, 454 B.R. 166, 169 (Bankr. D. Kan. 2011) (quoting *In re Midgard Corp.*, 204 B.R. 764, 771 (10th Cir. BAP 1997)).

[32] *Id.*

[33] *Id.*

[34] 28 U.S.C. § 1334(c)(1).

difficulty or unsettled nature of the applicable law; 4) the presence of a related proceeding commenced in state court or other nonbankruptcy court; 5) the jurisdictional basis, if any, other than § 1334; 6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; 7) the substance rather than form of an asserted "core" proceeding; 8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; 9) the burden of the bankruptcy court's docket; 10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; 11) the existence of a right to a jury trial; and 12) the presence in the proceeding of nondebtor parties.[35]

As to mandatory abstention, § 1334(c)(2) provides:

Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11, but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.[36]

Mandatory abstention applies when all of the following elements are met: 1) the motion to abstain was filed timely; 2) the action is based on state law; 3) an action has been commenced in state court; 4) the action can be timely adjudicated in state court; 5) there is no independent basis for federal jurisdiction other than bankruptcy; 6) the matter is non-core.[37] "Courts often look to the mandatory abstention provisions as a guide to whether they should exercise discretionary abstention.  If most of the elements of mandatory abstention are present, they are inclined to exercise abstention."[38]

---

[35] *In re Schempp Real Estate, LLC*, 303 B.R. 866, 876 (Bankr. D. Colo. 2003) (internal citations omitted).

[36] 28 U.S.C. § 1334(c)(2).

[37] *In re Midgard Corp.*, 204 B.R. 764, 776-80 (10th Cir. BAP 1997).

[38] *In re Clayter*, 174 B.R. 134, 141 (Bankr. D. Kan. 1994) (citing *See Counts v. Guaranty Savings & Loan Assoc. (In re Counts),* 54 B.R. 730, 736 (Bankr. D. Colo. 1985); also citing *Braucher v. Continental Illinois Nat. Bank & Trust (In re Illinois–California Express, Inc.),* 50 B.R. 232, 240-41 (Bankr. D. Colo. 1985)).

As to the substance of the Court's inquiry, the Court notes Debtor's claim for relief objecting to the proofs of claim of SoL Energy and Olson "arise in" the Code.  The same cannot be said for Debtor's other claims, and the remainder of this discussion will focus solely on Debtor's other claims.  Where, as here, the claims do not directly affect the property of the bankruptcy estate, and in large part constitute state law causes of action, they cannot be said to "arise in" or "arise under" the bankruptcy proceedings.[39]  Subject matter jurisdiction therefore rests on whether the claims are "related to" the bankruptcy proceedings.

The United States Court of Appeals for the Tenth Circuit has explained

> "[T]he test for determining whether a civil proceeding is related in bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy."  Although the proceeding need not be against the debtor or his property, the proceeding is related to the bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action in any way, thereby impacting on the handling and administration of the bankruptcy estate.[40]

In reviewing Debtor's claims, it is clear they do not pass the "related to" hurdle.  It is true SoL Energy and Olson are creditors in Debtor's bankruptcy case and have filed proofs of claim for amounts owed.  It is likewise true the feasibility of Debtor's Chapter 13 Plan depends, at least in part, on his successful prosecution of the claims asserted in this adversary proceeding.[41]  However, the Debtor's claims are based primarily on pre-petition alleged conduct of the defendants,[42] and the Debtor's "rights, liabilities, options or freedom of action" are not impacted by the Debtor's claims and such claims cannot properly be characterized as "related to" the bankruptcy case sufficient to confer jurisdiction upon this Court.

---

[39] *See LAR MPH* Holding, *LP v. Mordini (In re Mordini)*, 491 B.R. 567, 570 (Bankr. D. Colo. 2013).

[40] *Gardner v. United* States *(In re Gardner)*, 913 F.2d 1515, 1518 (10th Cir. 1990) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3rd Cir. 1984) (emphasis omitted)) (additional citations omitted).

[41] *See* ECF No. 86 in Administrative Case.

[42] The Court notes the Debtor's eighth and ninth claims for relief for fraud and intentional infliction of emotional distress include allegations Olson has made materially false statements in the instant proceeding.  Amended Complaint at ¶¶ 83(g)(15), 84(e)(9).  Such allegations, in and of themselves, are not sufficient to confer jurisdiction on this Court for the reasons stated herein.

Even if the Court were to find the Debtor's claims were "related to" the bankruptcy case, the Court finds discretionary abstention is warranted, particularly with respect to the State Law Claims.  There would be little effect on the efficient administration of the estate if the Court recommends abstention.  To the extent the Debtor recovers under the State Law Claims, the Debtor can provide for the turnover of such proceeds at a later date and time when such recovery is realized.  Additionally, as is readily apparent from the State Law Claims, state law issues predominate over bankruptcy issues.  The claims are asserted under Colorado law and are based on conduct predating the Debtor's bankruptcy filing.  Moreover, the issues to be presented to a state court involve well-developed principles of Colorado law.  There is nothing difficult or unsettled about the Colorado state law under which the State Law Claims are presented.

With respect to the presence of a related proceeding commenced in state court or other nonbankruptcy court, many of the State Law Claims are substantially similar to the claims asserted in the State Court Case, which had been pending for over a year at the time the Debtor's bankruptcy petition was filed.  Indeed, as discussed above, the Garfield County District Court had already considered and dismissed several of the Debtor's counterclaims and cross-claims that he now asserts as claims in this proceeding.  There is no independent basis for this Court's jurisdiction over the State Law Claims, and there is a high degree of remoteness of these claims to the main bankruptcy case due to the allegations of pre-petition conduct.

Additionally, this Court sees no issues of the feasibility of severing the State Law Claims given the posture of the State Court Case prior to the Debtor's bankruptcy.  Moreover, based on the substantial similarities between the counterclaims and cross-claims brought in the State Court Case and the claims asserted herein, it appears Debtor is engaging in forum shopping due to his lack of success on several of the State Law Claims in the State Court Case.  It is more appropriate for Debtor to return to State Court and pursue his causes of actions with the appropriate district or appellate courts.

The Energy Defendants and Willman also note additional defects with the Debtor's claims, namely the Debtor's claims are barred by the *Rooker-Feldman* doctrine and doctrines of preclusion.[43]  Having found sufficient

---

[43] ECF No. 38 at pp. 2-4; ECF No. 39 at p. 1.

grounds to abstain from hearing the State Law Claims, the Court will focus its inquiry only on the 1983 Claim.

With respect to the 1983 Claim, the Energy Defendants and Willman assert the Court lacks jurisdiction to hear such claim pursuant to the *Rooker-Feldman* doctrine.  "Under the *Rooker–Feldman* doctrine, the federal courts lack subject matter jurisdiction to hear appeals from final judgments of state courts or to adjudicate claims that are inextricably intertwined with those judgments."[44]  The Supreme Court has stated the *Rooker-Feldman* doctrine bars lower federal courts from hearing "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."[45]

The Debtor's 1983 Claim alleges the defendants, along with the State Court, "engag[ed] in a course of conduct that deprived [Debtor] and his predecessor in interest, GCE, of their constitutionally protected property interest to collect and use the funds Fangman owed GCE under the Installation Agreement in accordance with the terms of that Agreement."[46] Specifically, Debtor claims the defendants, through statements made to the State Court and the maintenance of the State Court Case, "deprived [Debtor's] and GCE's fifth and fourteenth amendment right to due process by affecting a defacto pre-judgment attachment of [Debtor's] and GCE's property without meeting the strict statutory requirements to obtain a prejudgment writ of attachment under the statute that was designed to protect those rights."[47]  Debtor requests this Court order the State Court "to immediately transfer the funds held in the state court registry pursuant to [the State Court Case] to the Chapter 13 Trustee or the registry of the bankruptcy court."[48]

The State Court previously entered judgment in favor of SoL Energy with respect to the interpleader claim asserted in the State Court Case in the

---

[44] *In re Ebel*, 139 F. App'x 26, 28 (10th Cir. 2005); *In re Smith*, 321 B.R. 542, 550 (Bankr. D. Colo. 2005) ("Under the *Rooker–Feldman* doctrine, this Court cannot act as an appellate court to the state court or otherwise collaterally attack the state court judgment.")(Both citing *Rooker v. Fidelity Trust Co.,* 263 U.S. 413 (1923) and *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983)).

[45] *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

[46] Amended Complaint at ¶ 91(f).

[47] *Id.* at ¶ 91(j).

[48] *Id.* at p. 42.

amount of $39,480.47.[49]  The Debtor cannot now attempt to have this Court review and reject such order.  To do so would be a violation of the *Rooker-Feldman* doctrine.

## CONCLUSION

While the Court recognizes Debtor is proceeding *pro se* and his pleadings are liberally construed, this is not without limits.[50]  Where the Court lacks jurisdiction to hear Debtor's claims, such claims must be dismissed.

Accordingly, IT IS HEREBY ORDERED

The Debtor's Motion to Amend is DENIED.

The Willman Motion to Dismiss is GRANTED and the Energy Motion to Dismiss is GRANTED IN PART.  Debtor's first, second, third, fourth, fifth, sixth, seventh, eighth, ninth, tenth, eleventh, twelfth, thirteenth, and fourteenth claims are DISMISSED WITHOUT PREJUDICE.

The Debtor's sole remaining claim objecting to the claims of Olson and SoL Energy is HELD IN ABEYANCE pending resolution of Debtor's cross-claims in the State Court Case.  The Debtor, SoL Energy, and Olson are ordered to file separate status reports with respect to the State Court Case as it pertains to the liquidation of SoL Energy and Olson's claims within sixty (60) days of the entry of this Order.


Dated January 23, 2020                    BY THE COURT:


Michael E. Romero, Chief Judge
United States Bankruptcy Court


---

[49] Energy Motion to Dismiss at Exh. C.

[50] *See Curley v. Perry*, 246 F.3d 1278, 1281, 1284 (10th Cir.2001) (upholding dismissal of a pro se plaintiff's complaint for failure to state a claim without opportunity to amend where "amendment would be futile").